UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO. 1:11-CV-396 JD |
| MOHAMED N Q YAHYA, *et alia*, | ) ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

This is an insurance coverage dispute. On December 2, 2011, plaintiff Motorists Mutual Insurance Company ("Motorists") filed an amended complaint suing the defendants under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, to establish the extent of its liability under a contract of automobile insurance issued to defendant Mohamed Yahya. [DE 5]. Yahya, his wife Hana Harhara, and the couple's son Mohammed Nasser were involved in a motor vehicle collision on December 26, 2010, when Yahya lost control of his vehicle and crossed the center line. Yahya and Harhara were seriously injured in the crash; Nasser was killed. Motorists seeks a judgment that it owes no coverage for the injuries sustained by Harhara and Nasser based on an intra-family exclusion in the bodily injury coverage section of the policy. On June 7, 2012, Motorists filed a motion for summary judgment to that effect. [DE 17]. On June 27, 2012, Yahya responded. On July 11, 2012, Motorists replied. The issue is ripe for adjudication, and this court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Summary judgment must be denied because neither party presented any evidence at all with respect to a dispositive factual question: whether, in the year in which the accident occurred, Yahya operated the covered vehicle in the state of Michigan for an aggregate of

1

more than 30 days.

## BACKGROUND

On May 23, 2012, Motorists filed a list of proposed factual stipulations for the parties to use at the summary judgment stage. [DE 16]. Later, in its brief supporting the motion for summary judgment, Motorists claimed that it received an email response from defense counsel agreeing to those stipulations. [DE 17 at 12]. This court has never seen the email. A "proposed" factual stipulation signed by only one party is not a stipulation at all, and, to the extent that the filing [DE 16] is asking for some court action or recognition, it is denied. It makes no practical difference, however. As Yahya stated in his response brief, "[n]one of the material facts in this action are in dispute." [DE 19 at 7].[1]

On or about December 26, 2010, Yahya was operating his motor vehicle on Michigan Avenue in Washtenaw County, Michigan, when he lost control of the car on ice and crossed the center line. His vehicle collided with another, and Yahya's minor son was killed. Yahya and his wife, who was also a passenger, were injured but survived the collision.

At the time of the accident, Yahya had automobile insurance coverage under a policy issued by Motorists, Policy No. 3797-06-825988-07A. The policy contains various coverage parts, of which one is at issue in this case: Part A, concerning liability coverage. Under Part A, Section A, Motorists generally agreed:

---

[1] For that matter, the stipulation says nothing about what will turn out to be the dispositive factual issue: whether or not Yahya operated his vehicle in the state of Michigan long enough to trigger the minimum protections of the No-Fault Act. As a result, accepting the proposed stipulations would not make any difference.

> A. We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the **insured**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

[DE 5-2 at 24 (emphasis original)].[2] But Part A, Section A, was modified by the "Amendment of Policy Provisions" attached to the policy itself, which stated:

> A. The following exclusion is added to Part A, Section A:
>
> We do not provide Liability Coverage for any person for **bodily injury** to you or any **family member**.

[DE 5-2 at 11 (emphasis original)]. Because of that amendment, and because the bodily injuries at issue in the Washtenaw County accident were sustained by Yahya and his family members, Motorists argues that no liability coverage is owed under Part A of the policy.[3]

Yahya disagrees, pointing to an independent Part A provision titled "out of state coverage":

> If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

---

[2] Bold font indicates a defined term. For example:

> **B.** **"Insured"** as used in this Part means:
>
> 1. You or any family member for the ownership, maintenance or use of any auto or trailer.

[DE 5-2 at 24 (emphasis original)].

[3] The court notes that Motorists is not claiming that no coverage at all is due under the policy. The exclusion listed in the amendments only applies to Part A of the policy, concerning liability coverage. No such exclusion exists with respect to Part B, concerning medical and funeral payments coverage. [DE 5-2 at 12]. That means Motorists is accountable for the medical expenses of all three passengers, under the plain language of the contract. According to Yahya, Motorists has complied with that portion of the policy and has covered qualifying medical bills. [DE 19 at 8].

3

> **A.** If the state or province has:
>
>> 1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
>>
>> 2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

[DE 5-2 at 26]. At the time of the accident, and at the time of the issuance of the policy, Yahya was an Indiana resident and his vehicle was principally garaged in Indiana. Since the accident occurred in Michigan, Yahya believes the out-of-state coverage provision applies. [DE 5-2 at 26-27]. He believes Motorists must therefore provide liability coverage consistent with the minimum requirements Michigan has enacted for motor vehicle personal injury and property protection, which forbid the use of an intra-family exclusion. *See* MCL § 500.3101 *et seq.*; *Farmers Ins. Exch. v. Kurzmann*, 668 N.W.2d 199, 204 (Mich. Ct. App. 2003) ("For more than twenty years, it has been against the public policy of this state to include a provision in an insurance policy that excludes coverage for bodily injury to any insured or a member of the insured's family[,]" because operation of such a provision prevents coverage required by the financial responsibility law).

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A material fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in her favor. *Anderson*, 477 U.S. at 255; *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## DISCUSSION

The case essentially comes down to one question: whether or not the intra-family exclusion applies. If it does, Motorists owes no liability coverage. If it does not, Motorists does owe coverage. The fact that the case revolves around an exclusion simplifies the placement of the burden of proof[4] – it is well-settled that an insurer bears the burden of proving that an exclusion applies. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 725 (Ind. Ct. App. 2004) ("Generally, a coverage exclusion is an affirmative defense, proof of which is the insurer's burden"); *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001). Furthermore, the placement of the burden on the declaratory judgment plaintiff seems compatible with what little evidence there is of the

---

[4] The federal courts are starkly divided on the question of which party bears the burden of proof, generally speaking, in a declaratory judgment action by an insurer. "The question arises when the parties are reversed in the declaratory action, as when an insurance company seeks a declaration that an injury is not covered by the policy. If there were no declaratory-judgment actions, the issue would come up when the insured or an injured person sued on the policy. In that suit the person seeking to recover on the policy would have the burden of proving compliance with the policy conditions." *See* Fed. Prac. & Proc. § 2770 (3d ed. 2012). On the other hand, "[t]here seems a good deal to be said for the contrary view that the party who institutes an action – the insurer, in the example given – should carry the burden." *Id.* (collecting sources).

5

Seventh Circuit's take on the issue. *See Met. Cas. Ins. Co. of New York v. Miller*, 188 F.2d 702 (7th Cir. 1951) (placing burden on insurer-plaintiff). Accordingly, the court considers whether Motorists has shown the absence of any genuine disputes of material fact with respect to the application of the exclusion, and whether Motorists has shown it is entitled to judgment as a matter of law.

First, the court determines that Indiana law controls the interpretation of the policy. Next, the court considers the plain language of the policy provisions at issue and assesses their impact on the case. In doing so, the court is hindered by the fact that the evidentiary record is incomplete. It is impossible to say whether the Michigan No-Fault Act applied to Yahya at the time of his accident. Without an answer to that question, the court cannot say whether Motorists is obligated to cover Yahya to the extent required by the Act. The deficiency in the evidence falls on Motorists as the plaintiff, as the movant, and as the insurer hoping to prove exclusion. As a result, summary judgment must be denied.

**A.    Indiana Law Governs the Interpretation of the Policy**

In diversity cases such as this one, the court applies federal procedural and state substantive law. *Allen v. Cedar Real Estate Gr., LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Rules of contract interpretation are treated as substantive, so the policy must be interpreted according to state law. *Id.* (citing *Bourke v. Dun & Bradstreet*, 159 F.3d 1032, 1036 (7th Cir. 1998)). Motorists argues that Indiana law should apply to the interpretation of the contract; Yahya appears to argue that Michigan law controls.[5] Motorists is correct. "If the laws of more than one jurisdiction arguably are in issue, *Erie* also requires a federal court to apply [the

---

[5] Arguing that Michigan law controls the interpretation of the contract is different, and more basic, than arguing that Michigan law, as essentially incorporated by reference, dictates the amount and type of liability coverage pursuant to the "out of state coverage provision" of the policy. Yahya is very clearly arguing the latter point, but it is less clear whether he holds any particular position on the first.

6

forum] state's choice of law rules." *Jean v. Dugan*, 20 F.3d 255, 260-61 (7th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Horn v. Transcon Lines, Inc.*, 7 F.3d 1305, 1307 (7th Cir. 1993)). The forum state is Indiana, so Indiana choice-of-law rules determine which state's law controls interpretation of the contract.

There is no choice-of-law provision in the policy, so the court must resort to general choice-of-law principles. In insurance cases, Indiana follows the "most intimate contacts" test. The court first attempts to determine the principal location of the insured risk. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 815-16 (Ind. 2010) (citing *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)). If the principal location of the insured risk can be determined, it is generally given more weight than other factors:

> The validity of a contract of . . . insurance and the rights created hereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy[.]

REST. (2D) OF CONFL. OF LAWS § 193 (1971); *see also Nat'l Union*, 940 N.E.2d at 816. If no such location exists, the court turns to the remaining contacts. 940 N.E.2d at 816. The remaining contacts include:

(1) the place of contracting,

(2) the place of negotiation of the contract,

(3) the place of performance, and

(4) the [domicile], residence, nationality, place of incorporation and place of business of the parties.

*See Hartford Acc. & Indemn. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997) (citing REST. (2D) § 188). Most of the contacts are self-explanatory; the "place of performance" is the location where insurance funds will be put to use. *Hartford*, 690 N.E.2d at 293.

7

In this case, the "principal location of the insured risk" was Indiana, whether measured by the place where the covered vehicle was principally garaged, by the place where the insured lived, by the place where the insured most often used the covered vehicle, or by where the contract was created. But even if that were not the case, the remaining contacts still favor Indiana. The parties do not dispute that Indiana was the place of contracting, as well as the place of negotiation. At the time of the accident, Yahya, his wife, and his son were all residents of Indiana. Presumably, that also means that the place of performance – the place where any funds would be disbursed – was Indiana. It is clear that this is an Indiana contract, and Indiana law therefore controls the interpretation of the contract. *See Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 7 (Ind. Ct. App. 2009) (where the only contact with another state is the accident itself, Indiana law controls).

**B.     Interpreting the Contract**

In Indiana, insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). When interpreting an insurance policy, the court's goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009), *trans. denied*. If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Sell v. United Farm Bureau Fam. Life Ins. Co.*, 647 N.E.2d 1129, 1132 (Ind. Ct. App. 1995). The court may not extend insurance coverage beyond that provided in the contract, nor may the court rewrite the clear and unambiguous language of the insurance contract. *Am. States Ins. v. Adair Indus.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991).

The terms of this contract are clear and unambiguous. First, pursuant to Part A, Section A,

Motorists has a duty to defend and indemnify the insured up to policy limits when the insured "becomes legally responsible" for bodily injury or property damage to another person "because of an auto accident[.]" [DE 5-2 at 24]. Due to the nature of the accident in this case, Yahya, the insured, is potentially legally responsible for bodily injuries to his wife and son. Under the amended exclusion to Part A, however, Motorists expressly refused to provide liability coverage to the insured for bodily injury to the insured or – most relevant here – to a family member. [DE 5-2 at 11]. Without more, the clear import of that language is that no liability coverage would be available to Yahya with respect to any claims by his wife or son based on the accident underlying this case.

But there is more, of course. The out-of-state coverage provision provides that, if a state has "[a] compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and *types of coverage*." [DE 5-2 at 26 (emphasis added)]. The import of that provision, too, is clear and unambiguous. It potentially changes the coverage provided by the policy. More specifically, it means that the coverage provided by the policy is *either* the types and amounts specifically stated therein (including the intrafamilial exclusion), *or* the minimum types and amounts required in the state where an accident occurs, if that required minimum coverage is greater than what is provided in the terms of the policy.

For that reason, Motorists's argument concerning the validity of an exclusion consistent with the Indiana Guest Passenger Statute, *see* IND. CODE § 34-30-11-1, under Michigan law is beside the point. [DE 20 at 2-3]. The question is not whether a simple, out-of-state insurance policy including an intrafamilial exclusion can be enforced under Michigan law. It can be. *See State Farm v. Sivey*, 404 Mich 51, 53-57 (1978), *overruled on other grounds*, *Titan Ins. Co. v. Hyten*, 491 Mich. 547

9

(2012). The question is whether Michigan, where the accident occurred, has "[a] compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state[,]" and, if so, what the "required minimum amounts and types of coverage" under that law are. If Michigan has a compulsory insurance law which applied to Yahya and which forbids intrafamilial exclusions, then the coverage provided by the policy changes to incorporate that extension of coverage. Put another way, the case is not about whether the exclusion can be *enforced* in Michigan; it is about whether, on the facts of this case and the language of this contract, the exclusion *exists* as a limitation on the coverage provided, or whether it is eliminated by the function of the policy's out-of-state coverage provision.[6]

## C. The Michigan No-Fault Act

So, adhering to the plain and unambiguous language of the policy, if Michigan has "[a] compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state[,]" then Motorists must provide at least "the required minimum amounts and types of coverage." Yahya argues that it does, and that the Act forbids intrafamilial exclusions. He is only partially correct. Where the Act does apply, the Michigan courts have indeed interpreted it to be incompatible with the use of intrafamilial exclusions. *See Kurzmann*, 257 Mich.App. at 418. But the Act does not apply to every driver in Michigan, and it is not clear whether it applied to Yahya in this case.

In short, the Michigan No-Fault Automobile Insurance Act, MCL § 500.3101 *et seq.*, first

---

[6] It is also beside the point that, as Motorists asserts, many (but not all) of the coverage types and amounts included in the policy already comply with Michigan law. [DE 20 at 3]. The language of the policy says that where a state's minimum requirements are more protective than the coverage listed therein, Motorists will provide "the required minimum amounts and types of coverage." It does not say Motorists will provide "the required minimum amounts and types of coverage, only to the extent that they are already provided by this policy."

passed in 1972 and occasionally revised in the years since, sets minimum insurance requirements for certain drivers and vehicle owners. Section 500.3101(1) requires that "all owners or registrants of motor vehicles registered in Michigan must maintain the insurance required by the [No-Fault Act.]" *Gersten v. Backwell*, 314 N.W.2d 645, 647 (Mich. Ct. App. 1981) (citing § 500.3101(1)). Section 500.3102(1) requires the same compliance from "[a] nonresident owner or registrant of a motor vehicle or motorcycle not registered in this state" if that person operates the motor vehicle in Michigan "for an aggregate of more than 30 days in any calendar year[.]" MCL § 500.3102(1); *Gersten*, 314 N.W.2d at 647 ("Likewise, all owners or registrants of motor vehicles not registered in Michigan must maintain the requisite insurance if the vehicle is operated in Michigan for more than 30 days in any year."). But as for nonresidents who do *not* operate their vehicles in Michigan for an aggregate of more than 30 days in a year, Michigan law contains no minimum insurance requirement at all: "Nonresidents are not required to purchase no-fault insurance if they operate their vehicles in this state for less than 30 days." *Gersten*, 314 N.W.2d at 647-48.

No evidence has been provided that Yahya was an owner or registrant of a motor vehicle registered in Michigan, so the Court cannot say that he was subject to the Act under § 500.3101(1). And no evidence has been presented on whether his use of the covered vehicle met the duration requirement necessary to subject him to the Act under § 500.3102(1). If the No-Fault Act never applied to Yahya because he did not operate his vehicle in Michigan for an aggregate of more than 30 days in the applicable year, then Motorists had no obligation to insure Yahya to a level commensurate with the Act's requirements, because Yahya was not obligated to carry that insurance. The case simply cannot be resolved without addressing this factual issue, so summary judgment must be denied.

Finally, it makes no difference, as to this issue, that Motorists certified compliance with the Act. The certification averred, in relevant part, that "any accidental bodily injury or property damage occurring in the State of Michigan . . . shall be subject to the personal and property insurance system set forth in [the No-Fault Act]." [DE 19-4 at 2]. But the No-Fault Act does not set forth any compulsory, or mandatory, minimum insurance requirement applicable to drivers who are in the state for less than 30 days. *Gersten*, 314 N.W.2d at 647-48. As a result, the court cannot say on this record what compliance with the "personal . . . insurance system set forth in [the No-Fault Act]" would require.

## CONCLUSION

Motorists's motion for summary judgment [DE 17] is **DENIED** due to the presence of a material and unresolved factual issue. The accompanying motion requesting oral argument [DE 18] is likewise **DENIED**; the deficiency here is one of evidence, not of argument. The proposed factual stipulation [DE 16] is **DENIED** because it was only signed by one party, but in any event it would not resolve the material fact in issue here. Should the parties stipulate to that material fact, then upon request the Court may revisit its decision herein. The court will contact counsel to set a status conference for the purpose of deciding the future course of this litigation, including whether a new discovery schedule or a new schedule for filing dispositive motions will be necessary.

SO ORDERED.

ENTERED:   March 11, 2013

                                             /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court