UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:11-CV-396 JD ) |
| MOHAMED N. Q. YAHYA, *et al.*, | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Motorists Mutual Insurance Company's ("Motorists") renewed motion for summary judgment [DE 29], which has been fully briefed. [DE 30, 32, 33]. The Court previously denied Motorists' first motion for summary judgment based on the lack of any evidence in the record as to what the Court determined was the dispositive fact. [DE 21]. That fact has now been resolved in Motorists' favor. [DE 24]. While the Court has fully considered the parties' arguments in this renewed motion, it concludes that summary judgment must be GRANTED in favor of Motorists on its complaint for declaratory judgment. Motorists remains obligated to provide the personal and property protection insurance coverage under the Michigan No-Fault Act, which is not at issue here, but it is not required to defend or indemnify the Defendant, Mohamed N.Q. Yahya ("Yahya"), against claims of liability asserted by members of his household arising out of the December 26, 2010 accident.

**I. FACTUAL BACKGROUND**

Both parties agree that the material facts in this matter are undisputed. On or about December 26, 2010, Yahya was operating his motor vehicle on Michigan Avenue in Washtenaw County, Michigan, when he lost control of the car on ice and crossed the center line. His vehicle

collided with another, and tragically, Yahya's minor son was killed. Yahya and his wife, who was also a passenger, were injured but survived the collision.

At the time of the accident, Yahya had automobile insurance coverage under a policy issued by Motorists, Policy No. 3797-06-825988-07A. The policy contains various coverage parts, of which one is at issue in this case: Part A, concerning liability coverage. Under Part A, Section A, Motorists generally agreed:

> **A.** We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the **insured**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

[DE 5-2 at 24 (emphasis original)]. But Part A, Section A, was modified by the "Amendment of Policy Provisions" attached to the policy itself, which stated:

> **A.** The following exclusion is added to Part A, Section A:
>
> We do not provide Liability Coverage for any person for **bodily injury** to you or any **family member**.

[DE 5-2 at 11 (emphasis original)]. Because of that amendment, and because the bodily injuries at issue in the Washtenaw County accident were sustained by Yahya and his family members, Motorists argues that no liability coverage is owed under Part A of the policy.[1]

Yahya disagrees, pointing to an independent Part A provision titled "out of state coverage":

---

[1] The court notes that Motorists is not claiming that no coverage at all is due under the policy. The exclusion listed in the amendments only applies to Part A of the policy, concerning liability coverage. Motorists has paid Yahya's and his wife's medical expenses, and has also paid for wages lost due to the accident.

2

> If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:
>
> **A.** If the state or province has:
>
> 1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
>
> 2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

[DE 5-2 at 26]. At the time of the accident, and at the time of the issuance of the policy, Yahya was an Indiana resident and his vehicle was principally garaged in Indiana. Mr. Yahya had also operated the car in Michigan for an aggregate of fewer than 30 days in the applicable year at the time of the accident. However, since the accident occurred in Michigan, Yahya believes the out-of-state coverage provision applies. [DE 5-2 at 26-27]. He believes Motorists must therefore provide liability coverage consistent with the framework Michigan has enacted for motor vehicle personal injury and property protection, which forbids the use of an intra-family exclusion. *See* MCL § 500.3101 *et seq.*; *Farmers Ins. Exch. v. Kurzmann*, 668 N.W.2d 199, 204 (Mich. Ct. App. 2003) ("For more than twenty years, it has been against the public policy of this state to include a provision in an insurance policy that excludes coverage for bodily injury to any insured or a member of the insured's family[,]" because operation of such a provision prevents coverage required by the financial responsibility law).

In addition, Motorists has filed a Certification with the state of Michigan in which it essentially opts-in to much of the Michigan No-Fault Act. In this document, Motorists:

> certifies that any accidental bodily injury or property damage occurring in the State of Michigan on or after October 1, 1973, arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by a resident of Canada or any State of the United States of America, other than Michigan, who is insured under any automobile liability policy issued by said company *shall be subject to the personal and property protection insurance system set forth in Chapter 31 of the Michigan Insurance Code* [the No-Fault Act] . . .

[DE 32-4 (emphasis added)]. Thus, Yahya argues that even if Michigan law is not incorporated through the terms of the insurance policy, this Certification obligates Motorists to provide the coverage at issue.

Motorists filed a complaint for declaratory judgment in this Court seeking declaration that it does not owe liability coverage to Yahya for any liability he may have to his wife or his deceased son for damages they sustained as a result of the accident. [DE 5]. Motorists moved for summary judgment [DE 17], but the Court denied the motion because the record contained no evidence as to whether Yahya had operated his vehicle in Michigan for an aggregate of over 30 days in the calendar year at the time of the accident. [DE 21]. The parties have since confirmed through requests for admissions that Yahya had not operated the vehicle in Michigan for more than 30 days, [DE 24] so Motorists has renewed its motion for summary judgment. [DE 29].

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A material fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other

hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in her favor. *Anderson*, 477 U.S. at 255; *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

### III. DISCUSSION

Consistent with its prior opinion, the Court first concludes that Indiana law governs the insurance agreement. Second, the Court concludes that the agreement does not by its terms require Motorists to provide the coverage Yahya seeks here. Finally, although the Court has reconsidered aspects of its previous opinion relating to Motorists' obligations under the Certification, it concludes that the Certification does not apply to the coverage at issue here, which falls in the category of "residual liability coverage" under Michigan's No-Fault Act. Accordingly, Motorists is not obligated to provide the coverage at issue, and summary judgment must be granted in its favor.

**A.   Choice of Law**

The Court incorporates its choice of law discussion as set forth in the prior opinion, concluding that Indiana law governs the interpretation of this contract:

> In diversity cases such as this one, the court applies federal procedural and state substantive law. *Allen v. Cedar Real Estate Gr., LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Rules of contract interpretation are treated as substantive, so the policy must be interpreted according to state law. *Id.* (citing *Bourke v. Dun & Bradstreet*, 159 F.3d 1032, 1036 (7th Cir. 1998)). Motorists argues that Indiana law should apply to the interpretation of the contract; Yahya appears to argue that Michigan law controls. Motorists is correct. "If the laws of more than one jurisdiction arguably are in issue, *Erie* also requires a federal court to apply [the forum] state's choice of law

rules." *Jean v. Dugan*, 20 F.3d 255, 260-61 (7th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Horn v. Transcon Lines, Inc.*, 7 F.3d 1305, 1307 (7th Cir. 1993)). The forum state is Indiana, so Indiana choice-of-law rules determine which state's law controls interpretation of the contract.

There is no choice-of-law provision in the policy, so the court must resort to general choice-of-law principles. In insurance cases, Indiana follows the "most intimate contacts" test. The court first attempts to determine the principal location of the insured risk. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 815-16 (Ind. 2010) (citing *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)). If the principal location of the insured risk can be determined, it is generally given more weight than other factors:

> The validity of a contract of . . . insurance and the rights created hereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy[.]

REST. (2D) OF CONFL. OF LAWS § 193 (1971); *see also Nat'l Union*, 940 N.E.2d at 816. If no such location exists, the court turns to the remaining contacts. 940 N.E.2d at 816. The remaining contacts include:

> (1)　the place of contracting,
> (2)　the place of negotiation of the contract,
> (3)　the place of performance, and
> (4)　the [domicile], residence, nationality, place of incorporation and place of business of the parties.

*See Hartford Acc. & Indemn. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997) (citing REST. (2D) § 188). Most of the contacts are self-explanatory; the "place of performance" is the location where insurance funds will be put to use. *Hartford*, 690 N.E.2d at 293.

In this case, the "principal location of the insured risk" was Indiana, whether measured by the place where the covered vehicle was principally garaged, by the place where the insured lived, by the place where the insured most often used the covered vehicle, or by where the contract was created. But even if that were not the case, the remaining contacts still favor Indiana. The parties do not dispute that Indiana was the place of contracting, as well as the place of negotiation. At the time of the accident, Yahya, his wife, and his son were all residents of Indiana. Presumably, that also means that the place of performance – the place where any funds would be disbursed – was Indiana. It is clear that this is an Indiana contract, and Indiana law therefore controls the interpretation of the contract. *See Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 7 (Ind. Ct. App. 2009) (where the only contact with another state is the accident itself, Indiana law controls).

[DE 21 pp. 6–8 (*Motorists Mutual Ins. Co. v. Yahya*, No. 1:11-cv-396, 2013 WL 943203, at *3–4 (N.D. Ind. Mar. 11, 2013)) (footnote omitted)].

Defendant does not take issue with this analysis *per se*, but instead argues that a choice of law analysis is never relevant to a claim for Michigan No-Fault benefits. This argument is misguided, however. As a federal district court sitting in diversity jurisdiction, this Court has an obligation to apply the choice of law analysis of the forum state, which is Indiana. *Jean*, 20 F.3d at 260–61. This analysis is indeed relevant here because if Michigan, and not Indiana, law governed this contract, then the intra-family exclusion clause would be void at the outset. *Compare Allstate Insurance Co. v. Boles*, 481 N.E.2d 1096, 1098 (Ind. 1985) (holding that intra-family exclusions are enforceable under Indiana law) *with Farmers Ins. Exch. v. Kurzmann*, 668 N.W.2d 199, 204 (Mich. Ct. App. 2003) (holding that intra-family exclusions are unenforceable under Michigan law since they violate the public policy of the state). It would then be unnecessary to consider whether the out-of-state coverage provision would provide this coverage, or if not, whether Motorists' No-Fault Act Certification contractually obligates it to provide the coverage regardless.[2] Thus, although Yahya is correct that Michigan law certainly bears on the resolution of these latter two issues, the choice of laws analysis is still relevant and necessary in this case.

---

[2] This would also be notable since in that event, the intra-family exclusion would be stricken from the policy and Yahya would be entitled to coverage in the full amount of the policy limits, or $100,000 per person and $300,000 per incident. *Kurzmann*, 668 N.W.2d at 204 (awarding coverage in the full amount of policy limits, not just the statutory minimums, where Michigan law applied and invalidated the intra-family exclusion). If Indiana law applies, however, then the intra-family exclusion would be valid and enforceable, and the coverage that Motorists may owe, either through the out-of-state coverage provision or the Certification, would only be in the amount required by the No-Fault Act, or $20,000 per person and $40,000 per incident. [DE 30-1 (providing "at least the required minimum amounts and types of coverage")]; MCL § 500.3009(1); *see Kurzmann*, 668 N.W.2d at 204 (emphasizing the fact that the exclusion was facially invalid in awarding coverage up to the full policy limits).

**B.      The Language of the Insurance Agreement**

Consistent with this Court's prior order, the Court concludes that the terms of the insurance agreement do not provide for the coverage at issue, which is coverage for liability that Yahya may have to his wife and to his deceased son's estate based on the accident in question. First, as previously stated:

> In Indiana, insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). When interpreting an insurance policy, the court's goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009), *trans. denied*. If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Sell v. United Farm Bureau Fam. Life Ins. Co.*, 647 N.E.2d 1129, 1132 (Ind. Ct. App. 1995). The court may not extend insurance coverage beyond that provided in the contract, nor may the court rewrite the clear and unambiguous language of the insurance contract. *Am. States Ins. v. Adair Indus.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991).
>
> The terms of this contract are clear and unambiguous. First, pursuant to Part A, Section A, Motorists has a duty to defend and indemnify the insured up to policy limits when the insured **"becomes legally responsible"** for bodily injury or property damage to another person "because of an auto accident[.]" [DE 5-2 at 24]. Due to the nature of the accident in this case, Yahya, the insured, is potentially legally responsible for bodily injuries to his wife and son. Under the amended exclusion to Part A, however, Motorists expressly refused to provide liability coverage to the insured for bodily injury to the insured or – most relevant here – to a family member. [DE 5-2 at 11]. Without more, the clear import of that language is that no liability coverage would be available to Yahya with respect to any claims by his wife or son based on the accident underlying this case.
>
> But there is more, of course. The out-of-state coverage provision provides that, if a state has "[a] compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and *types of coverage*." [DE 5-2 at 26 (emphasis added)]. The import of that provision, too, is clear and unambiguous. It potentially changes the coverage provided by the policy. More specifically, it means that the coverage provided by the policy is *either* the types and amounts specifically stated therein (including the intrafamilial exclusion), *or* the minimum types and amounts required in the state where an accident occurs, if that required minimum coverage is greater than what is provided in the terms of the policy.

[DE 21 pp. 8–9 (*Yahya*, 2013 WL 943203, at *4–5)].[3]

An intrafamilial exclusion is valid under Indiana law, so the intrafamilial exclusion to Part A precludes the coverage otherwise stated in that part of the policy. *Boles*, 481 N.E.2d at 1098. However, the Michigan No-Fault Act requires certain individuals to maintain various types of coverage, one of which is "residual liability insurance," which would provide the type of coverage Yahya seeks here. MCL § 500.3101(1). Michigan courts interpret intrafamilial exclusions as incompatible with this requirement. *Kurzmann*, 668 N.W.2d 204. The question therefore becomes whether Yahya was required to maintain insurance under the Michigan No-Fault Act. If so, then his policy will include this residual liability insurance through the out-of-state coverage provision, and he will receive the coverage he seeks.

Under the Michigan No-Fault Act, "The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." MCL § 500.3101(1). The Act also requires nonresidents to maintain such insurance in certain circumstances. Specifically, section 3102 states:

> A nonresident owner or registrant of a motor vehicle or motorcycle not registered in this state shall not operate or permit the motor vehicle or motorcycle to be operated in this state for an aggregate of more than 30 days in any calendar year unless he or she continuously maintains security for the payment of benefits pursuant to this chapter.

---

[3] The Court further notes for completeness that the out-of-state coverage provision contains two subsections: the compulsory coverage subsection, addressed above, and the financial responsibility subsection. Whereas the compulsory coverage subsection provides both the amounts *and types* of coverage required by a compulsory insurance law, the financial responsibility subsection only applies to adjust the limits contained on the declarations page of the policy if a state's financial responsibility laws specify higher limits. [DE 30-1 p. 27]. Because Yahya's obstacle to receiving the coverage is not the limits on the declarations page, but the intra-family exclusion contained in the endorsement, this subsection offers him no help.

MCL § 500.3102(1). Thus, as the Court of Appeals of Michigan has succinctly summarized, "Nonresidents are not required to purchase no-fault insurance if they operate their vehicles in this state for less than 30 days." *Gersten v. Blackwell*, 314 N.W.2d 645, 646 (Mich. Ct. App. 1981); *Allstate Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 258665, 2006 WL 659461, at *2 (Mich. Ct. App. Mar. 16, 2006) ("[I]t is undisputed that the truck . . . had not been operated in Michigan for more than 30 days in a calendar year, and was not required to be registered in Michigan. Therefore, [the insured] was not required to provide residual liability insurance coverage under these statutes.").

It is undisputed here that Yahya was not a Michigan resident and was not an owner or registrant of a vehicle required to be registered in Michigan. [DE 24] The parties have also confirmed since the last motion for summary judgment that Yahya had not operated his vehicle in Michigan for an aggregate of more than 30 days in the applicable year. [*Id.*] As a result, Michigan law did not require Yahya to have maintained any minimum insurance coverage at the time of the accident, so the insurance agreement does not provide for this coverage either directly or through the out-of-state coverage provision. *Clarendon*, 2006 WL 659461, at *3 ("[T]he policy's out-of-state coverage extension is only intended to ensure compliance with applicable state law and, therefore, does not require defendant to provide primary residual liability coverage in this case, because it is not required by state law.").

The Defendant responds to this conclusion by suggesting that this Court has misconstrued the implications of section 3102(1)'s 30-day threshold. Defendant argues that anyone who operates a vehicle in Michigan for more than 30 days must specifically purchase a policy of "Michigan no fault insurance," such that rather than triggering no-fault coverage under Yahya's Indiana policy upon reaching the 30-day threshold, section 3102 would have voided it. [DE 32 p.

10

6]. This argument begs the question, though.[4] If, as the Court interprets the policy, the out-of-state coverage provision kicks in at the 30-day threshold, meaning that the policy would provide no-fault coverage at that point, then Yahya *will* have procured the required no-fault insurance at that time and will therefore have satisfied the requirement that he maintain no-fault insurance if he operates his vehicle in Michigan for over 30 days. In any event, it is immaterial whether Yahya's coverage would have vested or voided upon reaching that threshold. It is undisputed that Yahya, an Indiana resident, operated his vehicle in Michigan for less than 30 days, and "[n]onresidents [of Michigan] are not required to purchase no-fault insurance if they operate their vehicles in this state for less than 30 days." *Gersten*, 314 N.W.2d at 646; *Clarendon*, 2006 WL 659461, at *2. Therefore, Yahya was not required to maintain any minimum insurance coverage under Michigan law, so the insurance agreement does not by its terms provide for the coverage at issue. Accordingly, if Motorists is obligated to provide the disputed coverage, it would have to be on account of the Certification, to which the Court turns next.

## C. Motorists' Certification of Compliance

Defendant finally argues that Motorists voluntarily obligated itself to provide the coverage at issue by filing its No-Fault Act Certification, and Defendant has offered some valid arguments on this issue relative to the Court's prior ruling. By filing the Certification, an insurer promises to provide any of its non-Michigan resident insureds who are involved in an accident in Michigan with "the personal and property protection insurance" benefits of the No-Fault Act.

---

[4] Though Defendant's argument is misplaced in relation to the effect of the 30-day threshold on the terms of the policy itself, it would be correct as to the threshold's effect on Yahya's eligibility for benefits based on the Certification. Assuming the policy would not provide the no-fault coverage but that the Certification would, Yahya would only be eligible to receive this coverage if he had operated his vehicle in Michigan for 30 or *fewer* days in the calendar year. MCL § 500.3113(b). Given the hypothetical's assumption that the policy would not provide the no-fault coverage, Yahya would not be in compliance with the Act, and would thus be ineligible for no-fault benefits, upon driving in Michigan for more than 30 days. *Id.*

MCL § 500.3163(1). In its previous order, the Court characterized the Certification as merely affirming an insurer's obligation to comply with the requirements of the No-Fault Act, and therefore interpreted the resolution of the Certification issue as linked to the question of whether the out-of-state coverage provision applied. [DE 21 p. 12]. As Defendant points out, however, the Certification is broader than that, and permits an insurer to essentially opt-in to aspects of the No-Fault Act. In that case, the insurer may be obligated to provide no-fault benefits even where those benefits are not provided under the terms of their policies.

Motorists has filed such a certification, and it is for that reason that Motorists has paid all of Yahya's and his wife's medical expenses, not just the $5,000 to which their coverage would otherwise be limited under the policy, in addition to work-loss benefits, which are not provided for at all under the policy. These benefits each fall under the personal protection insurance provisions of the No-Fault Act. MCL § 500.3107. Defendant argues that for the same reason Motorists is paying these personal protection insurance benefits, Motorists is obligated to provide residual liability insurance. The Court respectfully disagrees.

The Michigan No-Fault Act requires motorists to maintain three different categories of insurance: "[1] personal protection insurance, [2] property protection insurance, and [3] residual liability insurance." MCL § 500.3101. Personal protection insurance primarily covers an insured's own medical expenses and loss of wages; property protection insurance covers damage to certain property caused by the use of a vehicle, and; residual liability insurance covers a driver against the few classes of tort liability that the No-Fault Act does not eliminate.[5] MCL §§ 500.3107, .3121, .3131. Residual liability insurance differs notably from personal and

---

[5] As relevant here, residual liability insurance covers "noneconomic loss," which would include wrongful death, loss of consortium, and the like, but "only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL §§ 500.3131, .3135. This coverage must only be maintained in the amount of $20,000 for injury to one individual, and $40,000 for injury two or more persons. MCL §§ 500.3009(1), .3131.

12

property protection insurance in that it applies only where the insured is found legally liable or at fault for damages, whereas the others apply without regard to fault. *Compare* MCL § 500.3131(1) *with* §§ 500.3105(2), .3121(2).

Against this background, it becomes apparent that the Certification only obligates an insurer to provide personal and property protection insurance, not residual liability insurance. By filing the Certification, the insurer certifies that:

> any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, is subject to the *personal and property protection insurance system* under this act.

MCL § 500.3163(1) (emphasis added). The Act further specifies the rights and responsibilities the Certification imposes on an insurer and its insureds:

> [T]he insurer and its insureds with respect to [accidental bodily injury or property damage] have the rights and immunities under this act for *personal and property protection insureds*, and claimants have the rights and benefits of *personal and property protection insurance* claimants, including the right to receive benefits from the electing insurer as if it were an insurer of *personal and property protection insurance* applicable to the accidental bodily injury or property damage.

MCL § 500.3163(2) (emphases added). Similarly, the Certification that Motorists actually signed states that it "shall be subject to the *personal and property protection insurance* system set forth in [the No-Fault Act]." [DE 32-4 (emphasis added)]. Though these provisions repeatedly address personal and property protection coverage, they entirely omit any reference to residual liability protection. This provides strong evidence that the Certification does not apply to residual liability protection, and in fact leaves no textual basis from which to conclude that it does.

The Michigan Court of Appeals has reached the same conclusion. In *Allstate Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 258665, 2006 WL 659461, at *3 (Mich. Ct. App. Mar. 16, 2006), the court addressed the precise question of whether a Certification obligated an insurer to provide

13

residual liability protection: "Plaintiff argues that even if Michigan law does not require Ryder to carry primary residual liability coverage, [its insurer] voluntarily agreed to provide such coverage because it filed a certificate of compliance under MCL 500.3163. We disagree." The Court noted that both the statute and Certification specifically address "personal and property protection insurance," but that "neither § 3163 nor [the insurer's] certificate of compliance refer to residual liability coverage." *Id*. Therefore, the Court concluded that "the certificate does not obligate defendant to provide primary residual liability coverage in this case." *Id.* In arguing to the contrary, Defendant cites *Tevis v. Amex Assurance Co.*, 770 N.W.2d 16, 21 (Mich. Ct. App. 2009), which stated that the Certification "subjects the out-of-state insurer to the *entire* Michigan personal and property insurance system when *any* accidental bodily injury arising from an out-of-state insured's ownership or use of a motor vehicle occurs." (emphasis in original). However, this language reiterates the qualification that the Certification subjects an insurer to the entire Michigan "personal and property insurance system," as distinguished from residual liability insurance, which further supports this Court's conclusion.

      This conclusion is consistent with the structure and purpose of the No-Fault Act and the Certification. As stated by the Michigan Court of Appeals, "the apparent intent of § 3163 of the no-fault act was to guarantee that insured nonresidents injured in Michigan, who would be *unable to obtain relief through tort claims*, would be protected against *economic losses* to the same extent as Michigan residents are." *Jones v. State Farm Mut. Auto Ins. Co.*, 509 N.W.2d 829, 837 (Mich. Ct. App. 1993) (emphases added). Residual liability coverage, however, does not apply to economic losses, at least as applicable here. MCL § 500.3135(1) (stating that a "person remains subject to tort liability for *noneconomic loss*" for certain injuries (emphasis added)). Additionally, residual liability *only applies* to tort claims that *have not been abolished*,

meaning that the injured party remains free to collect from the tortfeasor to the same extent that they would have been able to recover from that individual's insurer had residual liability coverage been in place.[6] MCL § 500.3131(1) ("In this state this [residual liability] insurance shall afford coverage for automobile liability retained by section 3135."). The main difference in that case is that it can be much more difficult to collect against an individual, who may not have resources from which to collect, than against an insurance company. However, the Michigan Supreme Court has held that this is precisely where the No-Fault Act, which was enacted in large part to eliminate the difficulty of collecting from un- or under-insured drivers, intended to draw its line:

> In short, the no-fault act guarantees personal protection benefits to accident victims, even in the absence of applicable insurance coverage, in exchange for limitations on the victim's ability to file a tort claim. But the no-fault act does not similarly guarantee residual liability coverage, e.g., when a negligent driver is uninsured or uncollectible.

*Husted v. Dobbs*, 591 N.W.2d 642, 647 (Mich. 1999).

The Court therefore concludes that the Certification does not require Motorists to provide residual liability coverage, although contrary to its previous order the Certification does require personal and property protection coverage. As the Court concluded *supra*, the terms of Yahya's insurance agreement do not provide coverage to Yahya for liability to his family members, either. Accordingly, Motorists is not obligated to provide liability coverage to Yahya for damages sustained by his wife and deceased son as a consequence of the December 26, 2010 accident. The Court thus GRANTS Motorists' motion for summary judgment and GRANTS declaratory judgment in favor of Motorists in this action.

---

[6] Of course, this would be an unsatisfying option here, since if Yahya's wife and his child's estate were to collect from him, he would essentially be taking the money out of one pocket and putting it in the other.

## IV.  CONCLUSION

For these reasons, Motorists' motion for summary judgment [DE 29] is GRANTED. The Clerk is DIRECTED to enter judgment for the Plaintiff, Motorists Mutual Insurance Company, for whom declaratory judgment is GRANTED consistent with this opinion.

SO ORDERED.

ENTERED: January 15, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court